Earl H. CLARKE, Appellant,

v.

UNITED STATES, Appellee.

Carol B. MASIELLO, Appellant,

v.

UNITED STATES, Appellee.

Janelle J. KOSMIN, Appellant,

v.

UNITED STATES, Appellee.

Nos. 2520–2522.

Municipal Court of Appeals for the
District of Columbia.

Argued Feb. 15, 1960.

Decided April 7, 1960.
Rehearing Denied May 13, 1960.

Walter J. Murphy, Jr., Washington, D. C., with whom Samuel B. Block, Washington, D. C., was on the brief, for appellants.

Maurice R. Dunie, Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code, § 11–776(b).

CAYTON, Acting Judge.

Two female dancers were charged with having on two nights participated in obscene, indecent and lascivious performances at the Merry-Land Club, in violation of Code, § 22–2001. Also charged was a co-owner of the Club. Trial by the court resulted in convictions, and the defendants have appealed.

One of the grounds on which reversal is sought is the alleged insufficiency

of the evidence. This does not require lengthy discussion. According to four police officers, whose testimony the trial judge was entitled to believe, the performances went far beyond the usual "strip tease" and "bumps and grinds" routines. Government testimony was that while in a state of almost complete undress one of the dancers performed an unmistakably sexual pantomime; got down on the floor and gyrated and slid across the stage and leaned over customers' tables. On the second night she made even more obvious sexual motions while on the floor, and then left the stage and shook parts of her anatomy in the faces of men seated in the audience and addressed them with a provocative invitation in the form of question. The other dancer while almost nude rested her arms atop a piano and moved her body in sexually meaningful rhythms; also while squatting and bending she emitted "ecstatic sighs or shouts"; also she thrust her pubic area back and forth very close to men seated around the edge of the platform-stage. We have recited enough to indicate that despite denials in the defense testimony the trial judge was fully justified in ruling that the statute had been transgressed.

■ Appellants say there was error in refusing a "proffer" of expert testimony as to the mores of the community. But the transcript reveals no such proffer. Defense counsel said, "It's not an offer I am making; it's just a statement to the Court" that he was "willing" to obtain an expert witness; the trial judge said expert opinion would not be proper and counsel dropped the matter. In this there is no showing of error.

■ The defense offered magazines, newspaper clippings, advertisements and phonograph record jackets, to show contemporary community mores, standards or attitudes regarding obscenity. The trial court ruled this evidence inadmissible. The role of comparison evidence in obscenity cases is not clear.[1] But we think it was proper to exclude such evidence in this case, because there was no reasonable basis of comparison between printed books, magazines, etc., and live performances set to music, on a stage in front of an audience. Nor would such evidence have any real probative value on the question of the motive or intent of these appellants.

■ On the question of intent appellant Clarke advances another argument. He says he should have been permitted to negative criminal intent by showing that he consulted police officials as to what type of show would be acceptable to the Police Department. The conversations took place in 1951, some eight years before this offense, and at a time when Mr. Clarke was presenting a different type of entertainment. The conversations were clearly inadmissible for remoteness.

■ It is argued that appellants should have been permitted to ask the police officers what other night clubs they had visited, and what they had seen there. The claim is that such evidence would have shown "community tolerance," and was also admissible as to the motives or bias of the arresting officers.

The argument as to community tolerance is weak. Community standards are not established by showing that police officers observed other performances and made arrests—or did not make them. The guilt or innocence of these defendants in no way depended on what comparisons the officers might have made, or what differences they might have found in other performances at other establishments.

1. United States v. One Book Called "Ulysses", D.C.S.D.N.Y., 5 F.Supp. 182, affirmed 2 Cir., 72 F.2d 705; Grove Press, Inc. v. Christenberry, D.C.S.D. N.Y., 175 F.Supp. 488; Commonwealth v. Donaducy, 167 Pa.Super. 611, 76 A.2d 440, certiorari denied 341 U.S. 949, 71 S.Ct. 1016, 95 L.Ed. 1372; United States v. Levine, 2 Cir., 83 F.2d 156. See also People v. Smith, 161 Cal.App.2d Supp. 860, 327 P.2d 636, reversed 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205.

Nor is there a proper basis for claiming bias because an arresting officer did or did not make arrests of other people in similar circumstances. In this case it was affirmatively shown that the officers were under standing instructions to make more than one investigation (as they did here) before presenting their report to the United States Attorney for study as whether an arrest should be made. The Government properly points out that the arrests in this case were made on valid warrants issued out of the trial court.

Affirmed.