Herman L. WOMACK, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15749.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 7, 1960.

Decided Jan. 12, 1961.

Mr. Stanley M. Dietz, Washington, D. C., for appellant.

Mr. Maurice R. Dunie, Asst. U. S. Atty., with whom Mr. Oliver Gasch, U. S. Atty., and Mr. Carl W. Belcher, Asst. U. S. Atty., were on the brief, for appellee.

Before WILBUR K. MILLER, Chief Judge, and PRETTYMAN and BURGER, Circuit Judges.

PRETTYMAN, Circuit Judge.

After trial by a jury in the District Court appellant was convicted on twenty-six counts of an indictment for mailing information as to where and how obscene, lewd, lascivious, indecent, filthy and vile matter could be obtained, and on three counts for the actual mailing of such matter.[1] On this appeal he complains of error in the exclusion of evidence offered by him and the admission of evidence offered by the Government, illegality of his arrest and the search of his place of business, vagueness in the statute, insufficiency of the evidence against him, and error in the charge to the jury. We are of opinion no error occurred.

The evidence showed that appellant carried on a mail-order business in photographs. He solicited business by indiscriminately mailing proffers to names that he secured from various "physique" photographers. A card file containing

[1] The indictment contained thirty-one counts, but two counts were dismissed on the Government's motion at the close of its case. All were for violations of 18 U.S.C. § 1461 (1958).

40,000 names was found in his office. In evidence was a letter signed by the appellant and sent to a business correspondent, in which he referred to a master mailing list as "the permanent sucker list." In another letter appellant wrote: "[A model], if he has been photographed properly, has the potential sex appeal and drawing power that is characteristic of so many of the * * * models." And in the same letter he said: "In 1958, physique fans want their truck driver types already cleaned up, showered and ready for bed." A postal inspector testified Womack told him the pictures sold by a company of which he was the sole owner and operator "were intended for or that the purchasers were homosexuals."

The Government's first witness was a thirteen-year-old boy who had received in the mail, without solicitation or inquiry on his part, one of these proffers of photographs. He had handed the document to his father, who promptly notified the postal authorities. Other witnesses included boys nineteen, eighteen and fifteen years old, who had given their parents these advertisements. The circular required the prospect to sign a statement that he was an art student or art teacher, or engaged in some occupation that would involve a professional need for such photographs. This "prospectus" added that, if the recipient did not feel qualified as an art student, a home study course in figure drawing would be recommended to him. Womack admitted on the witness stand that he sent two circulars to the Boys' Club at a certain town.

Whatever may be the precise meanings of "obscene" and "filthy", or however broad or liberal community standards may be alleged to be, the photographs presented as Government exhibits in this case are within the definitions and outside the standards. No concept of art as art could include them. No concept of community standards could permit them.

Mr. Wigmore says:[2] "All evidential sources * * * are divided into three classes, namely, Testimonial, Circumstantial, and Autoptical." Concerning the latter he says:[3] "A fact is said to be evidenced Autoptically when it is offered for direct perception by the senses of the tribunal without depending on any conscious inference from some other testimonial or circumstantial fact."

■ The photographs which are exhibits in this case are conclusive autoptical proof of obscenity and filth.

■ Although the dispositive question in Roth v. United States[4] was the constitutionality of anti-obscenity statutes, the Court there laid down some guide lines in other phases of the problem. Obscenity and filth have always lacked protection in our jurisprudence. The test given by the Court, and followed here by us, is "whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." And prurient interest, in the Court's definition, quoted from the Model Penal Code of the American Law Institute,[5] includes "morbid interest in nudity, * * * [which] goes substantially beyond customary limits of candor". The impact upon the average person is the criterion. The Court quoted with approval the instruction of the trial judge that the jurors judge the material by present-day standards of the community.

Most of the difficulty which enshrouds discussion of the law concerning obscenity and filth develops upon consideration of books and magazine articles. Here arise problems of *scienter*, the meaning and effect of the whole, the value of the work to proper interests of the public, the contemporary community standards in similar matters, and other

2. Wigmore, Code of Evidence 42, § 200 (3d Ed.1942).

3. Id. at 44, § 207. See also 4 Wigmore, Evidence § 1150 (3d Ed.1942).

4. 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957.)

5. § 207.10(2). (Tent. Draft No. 6, 1957).

baffling problems under our precious right of free speech, discussed in the several opinions in Smith v. California.[6] But we have no such problem in the case at bar. These are stark, unretouched photographs—no text, no possible avoidance of *scienter*, no suggested proper purpose, no conceivable community standard which would permit the indiscriminate dissemination of this material, no alleviating artistic overtones. These exhibits reflect a morbid interest in the nude, beyond any customary limit of candor. They are "utterly without redeeming social importance."

 The trial judge denied admission into evidence of dozens of books and magazines which contained nudes and which are regularly sold in ordinary commerce. We think he correctly did so. The proffered evidence was immaterial, i. e., of no probative weight in reaching a decision upon the issue at trial. The fact that nudes by Manet, Titian, Raphael, Rembrandt, Picasso, and many others are accepted commercial items is of no possible probative value in deciding whether these particular photographs, which alone are in issue here, are obscene and filthy. If a piece of cloth is bright red, and the cloth itself is in evidence, no testimony, lay or expert, would be admissible to show the cloth is blue. Such testimony would be immaterial, of no probative value, upon the issue of the color. Its admission would be a waste of the court's time, confusing, prolonging, and tending to make a mockery of the processes of justice. Mr. Wigmore treats of this topic in his discussion of relevancy, positing that one of the elements of relevancy is that the proffered evidence have something more than a minimum of probative value. Whether academically we call the principle materiality or relevancy, it is settled that to be admissible a bit of evidence must have some potential probative weight upon the issue of fact under trial. In the case at bar the photographs were filthy, self-evidently and indisputably. We think that photographs can be so obscene—it is conceivably possible that they be so obscene—that the fact is incontrovertible. These photographs are such.

Apart from the foregoing, dispositive of the point is the fact that Womack made no attempt to show, as a foundation for his proffer, any resemblance between the proffered works of art and the photographs he was putting in the mail. The predicate for a conclusion that a disputed piece of mailed matter is acceptable under contemporary community standards, as shown by proffered other matter already in unquestioned circulation, must be that the two types of matter are similar. And as another part of his foundation he must show a reasonable degree of community acceptance of works like his own. The impossibility of such showing was fatal to the substance of Womack's case, and his failure to attempt it was a procedural fatality.

 Appellant called as witnesses two psychiatrists and two psychologists and sought to have them testify as to contemporary community standards, but they failed to qualify as experts on the subject and the court refused to let them express opinions on the subject. Obviously the trial judge was correct upon the point. To be permitted to express an opinion as an expert, a witness must first qualify as an expert on the subject at issue. There was no showing or proffer to show that these witnesses did in fact know or had reliable means of learning what those standards were.

The court directed that these comparatively mild sentences run concurrently. Therefore the validity of the judgment upon one count, relating to one of these exhibits, supports the sentence. That doctrine is unnecessary in our disposition of the case, which we think can rest upon the validity of the judgment upon all counts; we mention it merely to note the magnitude of appellant's task in attempting to overturn the whole of the judgment against him.

Affirmed.

6. 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).