Sam YANKOVITZ, Appellant,

v.

UNITED STATES, Appellee.

Nos. 3007–3009.

Municipal Court of Appeals for the District of Columbia.

Argued June 11, 1962.

Decided July 20, 1962.
Rehearing Denied Aug. 20, 1962.

1. Apparently this referred to a suit against a police officer attached to No. 10 precinct.

Joseph Rotwein, Washington, D. C., for appellant.

John R. Schmertz, Jr., Asst. U. S. Atty., with whom David C. Acheson, U. S. Atty., Nathan J. Paulson and Timothy C. Murphy, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

MYERS, Associate Judge.

Appellant, as president of a corporation operating a restaurant with a stage show consisting of three female impersonators, was charged with giving or participating on three separate occasions, in public exhibitions containing "obscene, indecent, or lascivious language, postures, or suggestions, or otherwise offending public decency" in violation of Sec. 22–2001, Code 1961. Trial by jury resulted in appellant's convictions on these three counts, from which he has appealed.[1]

The testimony is uncontradicted that appellant contracted for the show and adver- tised it as "the gayest spot in town;" that he had full control of the acts, with authority to delete or change them if he so desired; that certain parts were omitted at his request; and that he was present at the restaurant on the nights involved and saw most or part of the three performances.

One of the principal grounds on which reversal is sought is the alleged insufficiency of evidence to support the convictions. No lengthy discussion is required on this point. Two police officers observed the shows on three different occasions. They testified that many of the members of the audiences were known homosexuals. They recounted in detail numerous obscene and indecent jokes, suggestive actions, dirty songs and filthy gestures, "obscene" and "indecent" beyond the usual connotations of those words and beyond the pale of any standards of public decency. The shows were in no way defensible on the ground that they possessed "any redeeming importance." Appellant himself admitted that in securing this type of entertainment, he was not motivated by any interest in the theater, or in art, or in science. His purpose was to make money and he selected and advertised the shows in the expectation that they would attract homosexuals who frequented his establishment. That the dominant theme of the shows appealed to prurient interests and was indisputably offensive so as to affront current community standards of decency is apparent from the transcript. Upon the evidence presented, the jury could have found, and did so find, that each performance as a whole went well beyond the limitations set by contemporary notions of ordinary public decency in this community.

Appellant complains that each performance of the three-man group had been wrongfully expanded into separate criminal offenses and that he should have been permitted to proceed to trial on but *one* in-

<hr />

1. Appellant had also been charged with operating a disorderly house (Title 22–2722, Code, 1961) but he was acquitted by the jury. One of the three female impersonators was jointly tried for violation of Title 22–2001, but he was acquitted.

formation charging an obscene exhibition. We do not agree. There were three separate shows, each involving the elements essential to support a violation of the statute—not one continuous performance constituting a single offense. Appellant was charged in separate informations with transgression of the statute on each occasion. These were properly combined for trial. In denying appellant's motion to require an election by the government to go to trial on but of these misdemeanors, the court properly viewed the exhibitions as constituting three separate offenses.[2]

 Appellant also contends that the trial judge erred in refusing to grant his motion for a bill of particulars. From the transcript, it would appear that this motion was directed more to a fourth information charging him with keeping a disorderly house (of which he was acquitted by the jury) rather than to the charges of indecent exhibitions. In any event, the granting or denial of such a motion is addressed to the sound discretion of the court and a conviction will not be reversed unless the appellant was surprised and unprepared at the time of the trial.[3] In the instant case, the informations refer with specificity to the times and places of the performances. Appellant claimed neither surprise nor prejudice as a result of the denial of the requested particulars and, in fact, revealed his complete familiarity with the acts charged to be in violation of the statute by testifying in detail respecting them. We find no abuse of discretion in the refusal of the trial judge to grant this motion.

█ It is appellant's further contention that he was entitled to three peremptory challenges in selecting the jury in addition to those allowed his co-defendant. This is without merit. Where there are joint defendants on trial, they shall be treated as one defendant in the allowance and exercise of challenges.[4]

█ In passing upon proffered instructions for the jury, the trial judge denied certain requested instructions by appellant and, over his objections, granted certain ones by the government. Specifically, the appellant complains there was error in advising the jury it could convict him if it found "he knew or *should have known* the nature and character of the premises." The error, if any, was harmless. The jury was explicitly charged that intent was an essential element of the crime. Later this statement was amplified:

> "The jury is instructed that if they find * * * that the defendants did not have knowledge of indecency, obscenity, or lasciviousness of the performances of Ramos and Karlos, then the jury should find the defendants lacked the criminal intent * * * and should be found not guilty."

It is clear from the transcript that appellant had actual knowledge of the contents of the shows. The policemen testified he was present at all times, seating and greeting customers, and appellant testified in detail as to the contents of the shows—his version sometimes differing from that presented by the officers. He cannot now claim he was without knowledge of the performances and was thereby prejudiced by the instruction on this point which was framed to explain the personal liability of a managing head of a corporation engaged in illegal activity as part of its business.[5]

We have examined the separate rulings of the court on the other instructions of

2. Blockburger v. United States, 284 U.S. 299, 303, 52 S.Ct. 40, 76 L.Ed. 520.

3. Wong Tai v. United States, 273 U.S. 77, 82, 47 S.Ct. 300, 71 L.Ed. 545; Lucas v. United States, 70 App.D.C. 92, 104 F.2d 225.

4. Code 1961, Title 23–107; Rule 15, Criminal Rules of the Municipal Court; Lorenz v. United States, 24 App.D.C. 337, 368.

5. United States v. Laffal, D.C.Mun.App., 83 A.2d 871, 872.

which appellant complains and are convinced there was no prejudicial error by the trial judge. The jury was fully and carefully advised as to their duties and responsibilities in this case and the applicable law was spelled out for them to guide their deliberations upon the innocence or guilt of appellant on the four charges against him. We find the charge to be substantially accurate and complete on the law and to have presented appellant's side of the case fairly and fully.

Following oral argument of this case here, counsel for appellant called to our attention a recent decision (June 25, 1962) by the Supreme Court in Manual Enterprises v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639. We are not prepared at this time to hold that the bi-element proof imposed in the opinion for "obscenity" is required under our local statute to substantiate an "obscene exhibition" as here involved. When the highest Court added a new element of proof to the heretofore accepted standard of "prurient interest" appeal, it was dealing with Sec. 1461 of 18 U.S.C., a Federal statute declaring obscene or crime-inciting matter to be nonmailable. This element was defined as "patent offensiveness" or "indecency," that is to say, "so offensive * * * as to affront current community standards of decency." In any case, the Court made the observation that "the two elements tend to coalesce, for that which is patently offensive will also usually carry the requisite 'prurient interest' appeal."

Our Code provision is directed not only to obscene publications but also to obscene exhibitions which "offend public decency." We are of the opinion that under the charge of the court the required proof for conviction was fully explained to the jury. They were told that to find the defendant guilty they must first find criminal intent and then that the performances, each considered as a whole, went substantially beyond the common conscience of the community as they must first determine current community

standards to be, *and* that these exhibitions appealed to the prurient sex impulses of the average adult in the District of Columbia. This correctly meets the law on the standards of proof in this case.

Having considered appellant's other contentions and finding no error affecting substantial rights, we are convinced that appellant received a fair and impartial trial and that there was ample competent evidence in the record to support the jury's findings that he was guilty of knowingly giving or participating, on three occasions, in public exhibitions containing "obscene, indecent, or lascivious language, postures, or suggestions, or otherwise offending public decency." These public exhibitions did "obnoxiously debase portrayals of sex" [6] which the statute clearly intended to prohibit.

Affirmed.

---

6. Manual Enterprises v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639.