Lillian M. HUDSON, Esther Sesman, Maria-
elena Clark and Abe Attenson, Appellants,

v.

UNITED STATES, Appellee.

Abe ATTENSON, Hanna Bernstein and
Mary A. Tobin, Appellants,

v.

UNITED STATES, Appellee.

Nos. 4268, 4269.

District of Columbia Court of Appeals.

Argued July 17, 1967.

Decided Nov. 14, 1967.

John T. Bonner, Washington, D. C., for appellants.

Geoffrey M. Alprin, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty., Frank Q. Nebeker and Lawrence Lippe, Asst. U. S. Attys., were on the brief, for appellee.

Before HOOD, Chief Judge, and MYERS and KELLY, Associate Judges.

MYERS, Associate Judge:

Appellants [1] were convicted of staging obscene shows in the District of Columbia in violation of § 22–2001 D.C.Code (1961 ed.).[2]

Although in obscenity cases, as in all other cases relating to First Amendment guarantees of free expression, it is usually the duty of an appellate court to review the evidence from the trial court for the purpose of making "an independent constitutional judgment on the facts of the case as to whether the material involved is constitutionally protected," Jacobellis v. State of Ohio, 378 U.S. 184, 190, 84 S.Ct. 1676, 1678, 12 L.Ed.2d 793 (1964).[3] in view of our disposition of the present appeal, we find it unnecessary to consider the factual issues supporting the obscenity charge.

In 1957, the United States Supreme Court in Roth v. United States, 354

---

1. Attenson is the manager of a local burlesque theater; the other appellants are dancers who allegedly performed strip-tease acts with his knowledge and approval.

2. "Whoever * * * gives or participates in, or by bill, poster, or otherwise advertises, any public exhibition, show, performance, or play containing obscene, indecent, or lascivious language, postures, or suggestions, or otherwise offending public decency, shall be fined * * *."

3. As Mr. Justice Brennan pointed out, the obligation of the appellate court cannot properly be labeled a "censor" or "super-censor" function, since its only purpose is to test a challenged obscenity judgment against First Amendment guarantees.

U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498, first announced that the constitutional test of "obscenity" is whether, to the average person applying "contemporary community standards," the dominant theme of the material as a whole appeals to a prurient interest in sex. Under this test, "three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." A book named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachussetts, 383 U.S. 413, 418, 86 S.Ct. 975, 977, 16 L.Ed.2d 1 (1966).[4]

The only question before us is whether the trial court properly applied that part of the definition dealing with "contemporary community standards." Specifically, the issues are: (1) does the word "community" refer to a *local* community" or to the nation as a whole and (2) is the Government required to offer competent evidence to prove "contemporary standards" in the community.

I

■ We are of the opinion that the trial court correctly instructed the jury that to determine whether a show offends contemporary community standards of decency, reference must be made to community standards prevailing in the nation generally and not to the local standards of any specific state, county or city. To choose the mores of a locality as the standard by which permissible limits of candor and conduct are measured could effectively deny citizens of one jurisdiction access to entertainment generally available in other communities and cities in this country. Manual Enterprises, Inc. v. Day, 370 U.S. 478, 488, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962).

■ As used in statutory language, the word "obscene" is intended to have a meaning that varies from time to time as general notions of decency in attire and conduct of exhibitions for public entertainment tend to change. It is not meant to "embalm the precise morals of an age or place." United States v. Kennerley, 209 F. 119, 121 (S.D.N.Y.1913). On the other hand, at any one time, the meaning is not intended to vary from place to place. In Jacobellis v. State of Ohio, supra, Mr. Justice Brennan, in delivering the opinion, stated:

"The Court has explicitly refused to tolerate a result whereby 'the constitutional limits of free expression in the Nation would vary with state lines,' Pennekamp v. State of Florida, 328 U.S. 331 at 335, 66 S.Ct. 1029, 90 L.Ed. 1295." 378 U.S. at 194, 84 S.Ct. at 1682.

"We do not see how any 'local' definition of the 'community' could properly be employed in delineating the area of expression that is protected by the Federal Constitution. * * *" at 193, 84 S.Ct. at 1681.

"We thus reaffirm the position taken in *Roth* to the effect that the constitutional status of an allegedly obscene work must be determined on the basis of a national standard. It is, after all, a national Constitution we are expounding." at 195, 84 S.Ct. at 1682.

Although it is not clear that Mr. Justice Brennan was speaking for a majority of

4. In addition to applying to printed matter, such as books and photographs, the same standards are also extended to motion pictures, plays and burlesque shows, which are forms of speech and *prima facie* expressions protected by the First Amendment. Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952) [motion picture]; Adams Theatre Co. v. Keenan, 12 N.J. 267, 96 A.2d 519 (1953) [burlesque show]; Adams Newark Theatre Co. v. City of Newark, 22 N.J. 472, 126 A.2d 340 (1956) [burlesque show].

the court in this part of the opinion[5] and the question may not have been squarely decided, we find the reasoning in that opinion most persuasive. Accordingly, we rule that, in the District of Columbia, community standards in obscenity cases shall be determined by reference to contemporary community standards in the nation as a whole.

II

In opposing this appeal, the Government contends that whether the relevant community standards are local or national, it is not necessary for the Government to introduce any evidence to prove these standards. It is strongly urged that these standards may be determined solely in the light of the judge's or jurors' own experience and common sense. This may be true where "hard-core pornography," which is so offensive that "no conceivable community standard * * * would permit [its showing]," is involved. Womack v. United States, 111 U.S.App.D.C. 8, 10, 294 F.2d 204, 206 (1961). The case at bar, however, does not fall into that category, and knowledge of contemporary community standards, especially on a nationwide basis, is no more available to the trier of fact than the innumerable other facts which must normally be proved in an evidentiary way in many other trials.

[redacted] Where the material involved is not patently obscene, neither a judge nor twelve local jurors chosen at random are capable of determining the standards of tolerance prevalent in the nation generally without first being given some competent evidence of what those standards are. United States v. Klaw, 350 F.2d 155, 168 n. 14 (2d Cir. 1965). A guilty verdict in an obscenity trial should not be a legal expression of revulsion by the local community from which the jury is drawn. If a case is submitted to the trier of fact without first establishing the community standards by competent evidence to which the trier may refer, the verdict at best will be based on the prevailing customs in a limited geographical area and, at worst, upon the "subjective reflection of taste or moral outlook of individual jurors or individual judges. * * * [T]he determination of obscenity is for juror or judge, not on the basis of his personal upbringing or restricted reflection or the particular experience of life, but on the basis of 'contemporary community standards'." Smith v. People of State of California, 361 U.S. 147, 165, 80 S.Ct. 215, 225, 4 L.Ed.2d 205 (1959), concurring opinion of Mr. Justice Frankfurter. These standards must be established by relevant evidence at trial.[6]

[redacted] Since the prosecution in the present case had the burden of proving relevant community standards prevailing in the nation generally and elected not to do so, we hold that the Government failed to establish an essential element of the crime charged and the verdicts of guilty were therefore in error.

Reversed and remanded with directions to enter judgments of acquittal.

HOOD, Chief Judge, dissenting:

Appellants were charged with giving and participating in an obscene exhibition.[1]

5. While six justices concurred in the result, Mr. Justice Brennan's opinion represents his own view and that of Mr. Justice Goldberg. The two concurring opinions do not address themselves squarely to the issue in this case. See also the dissenting opinion of Mr. Justice Black v. Ginzburg v. United States, 383 U.S. 463, 480, 86 S.Ct. 942, 16 L.Ed. 2d 31 (1966).

6. Insofar as any language in Clarke v. United States, D.C.Mun.App., 160 A.2d 97 (1960) or in Yankovitz v. United States, D.C.Mun.App., 182 A.2d 889 (1962), could be construed to establish a local community standard or to relieve the government of its duty to prove prevailing community standards, it is overruled.

1. Although defense counsel attempted to establish that the sole reason the appellants were charged was because the dancers appeared without any covering on their breasts (without pasties), the

The exhibition or performance was described at trial by appellants' counsel as "a lusty, busty, burlesque show, in the finest traditions of our country." A reading of the record convinces me that the exhibition was neither legitimate nor traditional burlesque, but was what has been called "modern burlesque," described by one author in the following manner:

> a plotless musical entertainment consisting of a series of unrelated episodes and dances, all with the purpose of depicting or suggesting sexual subjects or objects. The one outstanding characteristic of modern burlesque is the fact that it is completely sex-centered. It has some low comedy and occasionally some humor, but the principal subject of both is sex. * * * The piece de resistance is the girl who disrobes, partially or entirely, and this act varies with the political season and the locality. * * * If burlesque of today is metropolitan, so also it is vice, and needs to be thought of in that light, as an aspect of social pathology. If vice implies a sense of antagonism toward existing mores, a purveying of sex in a vicarious, professional and promiscuous fashion, then burlesque is just that. * * * Although the operator may not be willing to say so to an inquirer, usually adopting a sanctimonious air, he knows, and everything in his theatre indicates he knows, that he is giving a sex show, sans excuses, sans philosophy and above all, sans clothes. He is, in that sense a professional purveyor of sex. Dressler, Burlesque as a Cultural Phenomenon (1937).[2]

The jury was instructed on the elements of obscenity in language following closely the test laid down by the Supreme Court in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and reiterated and elaborated upon in the later cases of Jacobellis v. State of Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); Ginzburg v. United States, 383 U.S. 463, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); Mishkin v. State of New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); and the "Fanny Hill" case, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). With respect to community standards the jury was instructed:

> Ladies and gentlemen of the jury, it is for you to be the exclusive judge of what is the common conscience of the community, as defined, and what the contemporary community standards are. You and you alone are the sole judges of this issue. In determining the common conscience in evaluating contemporary community standards, you are to consider the community as a whole, young and old, educated and uneducated, the religious and the irreligious, men, women and children. You are not to condemn or to exculpate any of these performances because of your own personal subjective standards. You are to apply contemporary community standards.[3]

On this record I would affirm the convictions in spite of what I consider an unfortunate error by the trial judge in a later instruction that, on the question of contemporary community standards, the word "community" refers "to the nation as a whole and not just to one city, county, or state in this nation." As there was no evidence of any national standard and the jury could not be expected to be acquainted with such, it was error to give the instruction. For reasons later discussed, I think it was harmless error.

record shows clearly the Government's case rested on a combination of the appearance and the conduct of the dancers.

2. As quoted by Judge (now Justice) Brennan in Adams Theatre Co. v. Keenan, 12 N.J. 267, 96 A.2d 519, 523 (1953). The Judge added that burlesque answering that description "may well be considered outrightly lewd and indecent."

3. This instruction followed closely the instruction given in *Roth* and apparently approved by the Supreme Court. 354 U.S. at 490, 77 S.Ct. 1304.

I do not agree with the holding in the majority opinion that in determining whether a show offends contemporary community standards, "reference must be made to community standards prevailing in the nation generally." For that proposition the majority relies upon the opinion of Mr. Justice Brennan in *Jacobellis,* but apparently the Justice spoke there only for himself and Mr. Justice Goldberg. I prefer the reasoning of the Chief Justice, who in his dissent, joined in by Mr. Justice Clark, said:

It is my belief that when the Court said in *Roth* that obscenity is to be defined by reference to "community standards," it meant community standards—not a national standard, as is sometimes argued. I believe that there is no provable "national standard" and perhaps there should be none. At all events, this Court has not been able to enunciate one, and it would be unreasonable to expect local courts to divine one. It is said that such a "community" approach may well result in material being proscribed as obscene in one community but not in another, and, in all probability, that is true. But communities throughout the Nation are in fact diverse, and it must be remembered that, in cases such as this one, the Court is confronted with the task of reconciling conflicting rights of the diverse communities within our society and of individuals. 378 U.S. at 200–01, 84 S.Ct. at 1685.

Ordinarily I would not rely upon a dissent but since the Supreme Court is, in the words of a recent writer,[4] "hopelessly fragmented over obscenity," I feel that this dissent by two Justices is equal to the opinion which expresses the views of only two other Justices.

The trial court is not given any guidelines by the Supreme Court or by this court for ascertaining the supposed "national standard." Is it to be determined by the testimony of experts? If so, by what experts and with what qualifications? If there should be testimony from these assumed experts that a majority of the cities throughout the Nation tolerate performances like those given here, must Washington and other cities be compelled to tolerate them? It is my opinion that the local community standard should govern and that a jury is as well qualified to determine the question as any expert.[5]

There is another reason why I feel that the assumed national standard should not apply in this case. As far as I am aware, the Supreme Court cases on the question of obscenity have dealt with books, magazines, photographs and motion pictures. It may be said that such have a national character in the sense that they are the same wherever read, exhibited or shown. A performance like the one here is strictly local. It may vary from locality to locality, or may vary in the same locality from day to day or performance to performance. Such a performance ought to be judged by local standards.[6]

Furthermore, I have serious doubts whether the constitutional guarantees of freedom of speech and of the press have any application to such a performance as is described in the record. Certainly we are not concerned here with freedom of the press. Likewise freedom of speech is of little concern here because speech was almost a nonessential part of the perform-

---

4. John P. MacKenzie in the Washington Post of October 2, 1967.

5. "The jury represents a cross-section of the community and has a special aptitude for reflecting the view of the average person. Jury trial of obscenity therefore provides a peculiarly competent application of the standard for judging obscenity which, by its definition, calls for an appraisal of material according to the average person's application of contemporary community standards." Mr. Justice Brennan dissenting in Kingsley Books, Inc. v. Brown, 354 U.S. 436, 448, 77 S.Ct. 1325, 1331, 1 L.Ed.2d 1469 (1957).

6. See City of Newark v. Humphres, 94 N.J.Super. 384, 228 A.2d 550 (1967).

ance. The complaint here is not directed at what was said but instead at what was done. The performance was essentially one of conduct. Even those who would give the broadest scope to the First Amendment recognize that it does not protect conduct. For example, Mr. Justice Black, dissenting in *Ginzburg*, says the First Amendment "forbids any kind or type or nature of governmental censorship over views as distinguished from conduct." 383 U.S. at 481, 86 S.Ct. at 953. The same Justice, dissenting in *Mishkin*, says the First Amendment, made applicable to the States by the Fourteenth, "leaves the States vast power to regulate conduct but no power at all, in my judgment, to make the expression of views a crime." 383 U.S. at 518, 86 S.Ct. at 969.

Mr. Justice Douglas, dissenting in *Roth*, after saying "there is nothing in the Constitution which forbids Congress from using its power over the mails to proscribe *conduct* on the grounds of good morals," added: "No one would suggest that the First Amendment permits nudity in public places, adultery, and other phases of sexual misconduct." 354 U.S. at 512, 77 S.Ct. at 1323. The same Justice, dissenting in *Ginzburg,* emphasizes that the First Amendment "allows all ideas to be expressed." 383 U.S. at 491, 86 S.Ct. at 974. When Mr. Justice Stewart, concurring in *Jacobellis,* speaks of hard-core pornography (378 U.S. at 197, 84 S.Ct. 1676) and repeats this expression in his dissent in *Ginzburg* (383 U.S. at 499, 86 S.Ct. 942), I do not think he is referring to conduct.

From the views expressed by those who would give the greatest latitude to the protection afforded by the First Amendment, I conclude that while all may agree that an artist may paint and exhibit a portrait of a nude, the artist has no constitutional right to walk down the street in the nude. I further conclude that the exhibition here is not protected by the First Amendment. Of course, a theatrical performance may, and many do, constitute an expression of views and ideas, but the performance here, although given on stage, consisted almost entirely of conduct. It was the conduct that was objectionable. If it can be called an expression of views or ideas, then the same could be said of any conduct, regardless of its nature.

In summary, I am of the opinion that the evidence warranted a submission of the case to the jury, and that the jury, without the aid of expert testimony, was qualified to determine whether the performance constituted obscenity as defined by the trial judge. I believe this court may, as the jury obviously did, ignore the trial court's statement concerning a national standard. I would affirm.