Friedrich HERMANN, Appellant,

v.

UNITED STATES, Appellee.

Olaf FENNEKOHL, Appellant,

v.

UNITED STATES, Appellee.

Nos. 4860, 4861.

District of Columbia Court of Appeals.

Argued June 3, 1969.

Decided Dec. 2, 1969.

James Hamilton, Washington, D. C., with whom John H. Schafer and Ralph J. Temple, Washington, D. C., were on the brief, for appellants.

Charles F. Scarlata, Atty., Dept. of Justice, with whom David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Before CAYTON, Chief Judge, Retired, and QUINN and MYERS, Associate Judges, Retired.

CAYTON, Judge.

The two appellants were convicted of knowingly presenting an obscene motion picture in a theater in the District of Columbia. D.C.Code 1967, § 22–2001(a) (1969 Supp.). A jail sentence of 60 days plus a fine was imposed on one appellant, and the other was ordered to pay a fine or in lieu thereof to serve 30 days in jail. The judge also ordered the film condemned.

Bringing the case here for review, appellants contend that the Government failed to prove the essential elements of obscenity with respect to the film: that it appeals to the prurient interest of the audience; that it affronts national community standards; and that it is utterly without redeeming social importance.

They also contend that the Government failed to prove the element of *scienter* necessary for conviction in that the defendants had no knowledge, or means of knowledge,

that the showing of the film would constitute criminal conduct. Appellants also attack the constitutionality of the statute under which the prosecution was brought contending that it is void for vagueness, overbroad in its potential application, and violative of First Amendment freedoms.

Titled "Threes, Menage a Trois" the film runs for about an hour, has very little plot or story line and is narrated by a female "voice over", the actors themselves not being heard. There is a succession of more or less disconnected scenes portraying or suggesting sexual activities including repetitive self-fondling of female nipples, lesbian-like stroking, some displays of female genital areas and pubic hair, and poses suggestive of cunnilingus between a fully dressed man and a partly dressed woman. There are also scenes of the principal female character strolling fully dressed along the seashore, philosophizing on her sexual and romantic situation.

To support its charge the Government presented as "experts" a psychiatrist and a local newspaper writer and art critic. They reviewed the film with reference to the elements of legal obscenity. It was stipulated that appellants had viewed enough of the film prior to its presentation to have acquired a general knowledge of its content.

The defense presented three "expert" witnesses. One was a writer, critic and film distributor; one was a writer and instructor of English at a local university; and one was a psychiatrist. They broadly contradicted the Government's witnesses. It is not considered necessary to set out the conflicting views of the witnesses as to the artistic value of the film or its impact from the standpoint of prurience. Appellants also testified, and reference will later be made to their testimony.

■ This court is committed to the proposition that where the material involved is not patently obscene, it is to be tested by national rather than local community standards. Hudson v. United States, D.C.

App., 234 A.2d 903 (1967). As to what the national standards are, there has been confusion aplenty, not only among the many "experts" who have been called to testify in various jurisdictions but also among recent decisions of some of our highest courts. This is due in part to the "dim and uncertain line" that often separates obscenity from constitutionally protected expression. Jacobellis v. Ohio, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). But in past few years there has emerged a more permissive—many say a more realistic—approach than that followed in decisions made in earlier decades.

Among the most recent of such cases is the 1968 decision of the Second Circuit in United States v. A Motion Picture Film Entitled "I Am Curious (Yellow)", 404 F.2d 196, and the 1967 decision of the Supreme Court in Schackman v. California, 388 U. S. 454, 87 S.Ct. 2107, 18 L.Ed.2d 1316. The Schackman case involved three films which had been considered in a related case by the United States District Court, in Schackman v. Arnebergh, 258 F.Supp. 983 (C.D.Cal.1966). In its decision the District Court set out a full description of the moving pictures which are strikingly and essentially similar in makeup, subject treatment and content to the one we are here considering. Their presentation led to the conviction of Schackman under a California obscenity statute. The Supreme Court reversed the conviction without opinion, citing Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967).

Earlier, in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) the Supreme Court had held among other things that the test is whether the dominant theme of the material taken as a whole appeals to prurient interest. This holding was cited in a Book named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney General of Com. of Massachusetts, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966) where it was also said:

"* * * [i]t must be established that (a) the dominant theme of the material

taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value." 383 U.S. at 418, 86 S.Ct. at 977.

■ The film here involved contains nude, near-nude and erotic scenes and has very little literary, pictorial, musical, or other artistic value reflecting any real redeeming social importance. It may correctly be described as trash—and tiresome trash at that. But that is not the same as saying that it should be condemned as obscene as a matter of law. It is not "patently obscene" or "hard-core" in nature. Compared with such films as that in the *Schackman* and *"I Am Curious"* cases it is at worst of a borderline nature.

We should not lose sight of the fact that appellants were not on trial for presenting a tasteless, cheap or off-color film, but an *obscene* one. That appellants were in the business of presenting films which were "dismally unpleasant, uncouth, and tawdry" is probably not open to question, but we must affirm their right to do so, Manual Enterprises, Inc. v. Day, 370 U.S. 478, 82 S.Ct. 1432, 8 L.Ed.2d 639 (1962), so long as they do not transcend the bounds of decency or the tests stated above.

The evidence did not establish a disregard of standards of community acceptability, but fairly indicated that appellants' policy was marked by caution which took cognizance of prevailing standards. Based on our view of the film and our consideration of the applicable rules of law, we have concluded that the evidence was insufficient to sustain the convictions.

Reversed with instructions to enter judgments of acquittal.

MYERS, Associate Judge, Retired (dissenting):

The last paragraph of the majority opinion, with which I am in disagreement, states that the appellants' convictions in the trial court for knowingly presenting an obscene motion picture in violation of D.C. Code 1967, § 22–2001(a) (1969 Supp.) must be reversed because—

"Based on *our view of the film* and our consideration of the applicable rules of law, we have concluded *that the evidence was insufficient to sustain the convictions."* (Emphasis supplied.)

No effort was made to detail from the record of the trial with its transcript of testimony of all witnesses, exactly why the evidence was legally "insufficient" to sustain the charges against appellants, although it was stated that the Government presented the expert testimony of two witnesses—a psychiatrist (of national reputation in his field with broad experience in and knowledge of obscenity cases) and a well-known local newspaper writer and art critic—who were "broadly contradicted by two defense witnesses"—"a writer and instructor of English at a local university" and by another psychiatrist. This demonstrates conflict in the evidence but not insufficiency.

No attempt was made to attack the factual findings of the trial judge in reaching determination of the guilt or innocence of appellants. That there was conflict of testimony was not unexpected in a criminal trial of this nature especially where "experts" are called to give their individual opinions.

Although I am not certain whether the factual findings of the majority opinion represent a *de novo* consideration of all testimony previously taken before the trial judge or were a substitution of their own views predicated solely upon their seeing the picture itself as one part of the record. I am satisfied that neither method for that purpose is valid. An appellate court is not empowered to either substitute its own opinion for a decision by a trial court or to

set aside any conviction, when there is competent, substantial evidence to support the same in the record of the trial court.

Whatever assumption may be correct, I am deeply concerned that either has been applied in the present appeals. Certainly any later view of the film alone by this court should not prevail over that of the trial judge, as he had the benefit of other testimony from witnesses, especially of appellants themselves, and could observe their demeanors on the stand, and judge their truthfulness or sincerity. There was no opportunity of doing so here and these factors weighed heavily in reaching the final determination of obscenity on the trial level.

Moreover, as appellate judges, we can state with no greater degree of certainty than did the trial judge what appeals or what does not appeal to any particular groups' "prurient interest", or whether or not this film exceeded national contemporary community standards, or whether it is or is not of redeeming social value. An appellate judge is not endowed with an omniscient insight into the resolution of these important factual issues—which are properly within the province of the trial-level fact-finder's scope of inquiry.

However other courts of appeal may consider their role in this type of appeal, I am convinced that ours should be essentially no different than in any other criminal appeal. As Chief Justice Warren suggested in his dissent in Jacobellis v. Ohio, 378 U.S. 184, 202, 84 S.Ct. 1676, 12 L.Ed. 2d 793 (1964), we should limit our consideration to whether or not there was sufficient competent evidence in the record to support the trial findings; that we should ensure that proper trial procedure was followed; and that appropriate legal standards were applied. It is equally true that we should avoid to the utmost any inclination to insert our own views on the ultimate outcome that might be attributed to personal views or philosophies. On the question of *obscenity,* stricter standards of proof should be recognized possibly because

a constitutional question is involved. Niemotko v. Maryland, 340 U.S. 268, 71 S.Ct. 325, 328, 95 L.Ed. 267 (1951). But where the evidence is in conflict, as here, we should carefully adhere to these principles in weighing and evaluating the proof essential to establish guilt or innocence, and allow the determination of the non-jury trial judge to stand, if supported by competent relevant evidence. I seriously doubt the jurisdiction of our appellate court to do otherwise. See 17 D.C.Code § 305(a) (1967); Freas v. Gitomer, D.C.App., 256 A.2d 573 (1969). We have had occasion in previous cases on appeal to approve of this restriction in power of review. In Hart v. Cherner, D.C.Mun.App., 178 A.2d 919 (1962), we pointed out the statement of Judge Burger (now Chief Justice of the United States) as so aptly expressed in Bellevue Gardens, Inc. v. Hill, 111 U.S. App.D.C. 343, 344, 297 F.2d 185, 186, that

" * * * indeed the very integrity of our judicial system rests on no principle more firmly than on that which precludes retrial of fact issues under the form or guise of appellate review."

The law is not such that the guilt or innocence of any defendant in a case, such as this, turns on his subjective evaluation of the material in question, Rosen v. United States, 161 U.S. 29, 41, 16 S.Ct. 434, 40 L.Ed. 606 (1896); Kahm v. United States, 300 F.2d 78 (5th Cir.), cert. denied, 369 U.S. 859, 82 S.Ct. 949, 8 L.Ed.2d 18 (1962), nor would he be excused by reason of the fact that he had consulted and been advised by learned legal counsel that it was proper and right under the law to exhibit the film in question. Appellants knew exactly what they were doing in showing the film in the D. C. theater, and their guess, or hope that it would not be adjudged legally obscene by so doing, does not absolve their guilt, when it was in fact obscene. It afforded them no comfort that the law enforcement officers in certain other areas were lax or less careful in requiring compliance with their obscenity statutes or that another state's agency had approved the

showing of the film. These facts were admitted into the record and went to the question of the national standards in showing the same film in this jurisdiction.

The majority opinion also describes the present film—"Threes, Menage a Trois"—as, at the worst, of a "borderline nature". Suffice it to say that the trial judge was lenient in the admission of a great amount of testimony in respect to the question of "obscenity". Appellants may have the right to ply their obnoxious trade as close as they dare to that borderline—that "dim and uncertain line", the majority call it, that separates legal obscenity from constitutionally protected expression or actions, but if that *uncertain* line is crossed, as was done in this case, the offenders should be held strictly accountable for their failure to keep within legally permissible boundaries. Once they embark intentionally and deliberately on a business practice of peddling uncouth and vulgar matter for public view, they do so at their own risk and having violated the law must take the consequences. This is the present case.

I am frankly dismayed by the result reached by the majority in this case. The findings of fact by the trial judge after a fair hearing, were based on substantial, competent evidence establishing the appropriate standards set by Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed. 2d 1498 (1957), and as repeated in Memoirs v. Massachusetts, 383 U.S. 413, 418, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), that had been violated by the showing of the film.

There is always risk that some will be punished who live on the edge of the law but attempt to stay within it. This risk, however, is far outweighed by the great potential harm to society that would result were the unlicensed dissemination of filth by a defendant under the theory that he thought he could get away with it, absolved him of any guilt.

Appellants in this case were properly adjudged guilty by the trial judge and his findings of fact were based upon sufficient competent evidence in the trial record. Therefore the judgments of guilty were valid and proper and should be affirmed in full.

For reasons above stated, I must respectfully dissent.