94 N.J. Super. 384 (1967)
228 A.2d 550
CITY OF NEWARK, PLAINTIFF-RESPONDENT,
v.
JOY HUMPHRES, AMTULLA KHAN, AND ROSE PORTH, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Essex County Court, Law Division.
Decided March 13, 1967.
*387 Mr. Philip Insabella, Assistant Corporation Counsel, for plaintiff (Mr. Norman N. Schiff, Corporation Counsel, attorney).
Mr. George R. Sommer for defendants.
SCHAPIRA, J.C.C.
Defendants, three female performers, appeal their convictions by the Newark Municipal Court, R.R. 3:10-2, resulting from complaints brought by the Newark Police Department charging them with violations of c. 20, § 20.7(p), pars. 1 and 3 of the compiled ordinances, which provide in pertinent part:
"Any person who commits any of the following acts shall be deemed to have committed the offense of disorderly conduct:

* * * * * * * *
(p) Any person who performs, shows, or exhibits, acts, or represents on any public stage, * * * the commission of actions that shall be lewd, obscene or indecent, and specifically:
1. Any female performer who, in the presence of the audience, removes her clothing so as to * * * give the illusion of nudeness, of the lower abdomen, genital organs, buttocks or breasts;

*388 * * * * * * * *
3. [A]ny performer who performs any dance, episode or musical entertainment, the purpose or effect of which is to direct the attention of the spectator to the breasts, buttocks or genital organs of the performer."
Defendants Amtulla Khan, Joy Humphres and Rose Porth were charged with disrobing in the presence of an audience so as to give the illusion of nudeness. Miss Khan and Miss Humphres were also charged with performing a dance, the effect of which was to direct attention to the breasts, buttocks or genital organs.
Witnesses for the city, Lieutenant Dougherty and Policewoman Mason, both of the Newark Police Department, and Detective Magnusson, an obscenity investigator of the Essex County Sheriff's Office, testified as to the performances by Miss Humphres, Miss Khan and Miss Porth on the evening of November 22, 1966, and the parts thereof which they considered lewd, obscene and indecent. These witnesses observed their performances from about the twelfth row, also having observed the same show on the previous day from the mezzanine, but at that time they found no illusion of nudeness, nor was the performance rated offensive or objectionable.
With respect to Miss Humphres, the testimony depicted her entrance upon the stage in an evening dress and long gloves. Accompanied by music, she commenced dancing, which involved sequences of disrobement, undulation of her body, wiggling of her buttocks, drawing of her hands over her body and doing backbends which, according to Lieutenant Dougherty, drew his attention to her breasts. Toward the completion of her performance she was attired in a transparent bra with pasties, and transparent briefs with cloth coverings over the genital organs and center of the buttocks. It was the opinion of the witnesses that she appeared nude.
Miss Humphres testified that her dance, which was artistic, acrobatic and not undulating, lasted approximately ten minutes, the last three minutes of which included backbends, spins and high kicks. She denied ever doing any bumps or *389 grinds, or ever purposely directing attention to her breasts, buttocks, or genital organs.
Miss Khan, the star of the show, billed as Miss Burlesque of 1966, performed for about 18 minutes. As the witnesses described it, she entered the spotlight fully clothed, did several "bumps and grinds," and disrobed in a purplish light, revealing an iridescent beaded bikini as she danced, playing the rays of two small flashlights across her body. Lieutenant Dougherty said the rays drew his attention to her breasts and genital organs and, in spite of the subdued lighting, produced the illusion of nudity.
Miss Khan testified that her beaded bikini dance in "black light" was creative. She admitted swirling two small flashlights circularly to give her greater effect to her dance, but never purposely trained them on her breasts or genital organs.
The only defendant not fully clothed at the opening of her performance or anytime thereafter, but whose dance (except for a single segment) the city's witnesses agreed was not offensive, was Miss Porth. A ballerina and toe dancer, Miss Porth interpreted the four seasons of the year, commencing with the winter season, appropriately dressed in a brief but admittedly adequate Santa Claus outfit. The witnesses agreed that she did not execute bumps or grinds and that her interpretations of the winter, spring and fall seasons were not offensive. But the heat of summer apparently was overwhelming, for after Miss Porth ducked behind the protective shade of an umbrella, supposedly at the beach, she reappeared highly exposed to the sun's rays; and the witnesses indicated that her bikini and pasties, augmented by lighting effects, created an illusion of nudeness. Miss Porth stated that her summer season costume (or the lack of one) was such as is generally worn without objection on most American beaches.
With regard to all three performances, no clothing or pictures of the allegedly objectionable segments of the performances were introduced into evidence.
*390 The basic issue presented is whether the performances of these individuals were obscene. The enumerated condemnable acts of "creating the illusion of nudeness" and "directing the spectators' attention to the breasts, buttocks or genital organs of the performer" are descriptive of obscenity, and must be considered in light of the attending circumstances and interpreted with reason and good judgment. Adams Newark Theatre Co. v. City of Newark, 22 N.J. 472, 479 (1956), affirmed 354 U.S. 931, 77 S.Ct. 1395, 1 L.Ed.2d 1533 (1956).
The essential test for determining obscenity was articulated in Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304 (1956), as follows:
"* * * whether to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." (at p. 476, 77 S.Ct., at p. 1311)
Two further tests have subsequently been added as guidelines in aid of adjudicating what is obscene, namely, whether the presentation is "patently offensive" because it affronts contemporary community standards relating to the description of sexual matters, and whether it is "utterly without social redeeming value." State v. Hudson County News Co., 41 N.J. 247, 257, fn. 6 (1963); G.P. Putnam's Sons v. Calissi, 86 N.J. Super. 82, 94 (Ch. Div. 1964); N.J.S. 2A:115-1.1.
These three obscenity tests must be applied independently and if any one standard fails to be proven, the presentation cannot be considered obscene. A Book Named "John Cleland's Memoirs of a Woman of Pleasure" v. Attorney Gen., 382 U.S. 413, 86 S.Ct. 975, 978, 16 L.Ed.2d 1 (1966). But these standards merely create an illusory sense of certainty, since they depend on subjective evaluations. "Social redeeming value" requires expert opinion, resting upon the subjective judgment of that critic. So, too, with respect to "appeal to the prurient interest" test and "patently offensive" test, the proof of which depends upon the *391 censor's own highly subjective view of morality and runs the risk and danger of unreasonable disagreement with common notions of what is obscene in accordance with contemporary community standards.
There is no unanimity of opinion in the other jurisdictions, federal and state, with regard to whether contemporary community standards are national or local in scope. Our own jurisdiction has adopted the national standard in cases involving printed and published material, Hudson County News Co., and G.P. Putnam's Sons, supra  material permanent in nature, capable of expressing and reproducing the exact same words, scenes or images in the identical manner and form throughout the entire nation. The distinguishing feature in the present case is the fact that the court is dealing with a live performance, not an entire show, of which a fleeting moment might have revealed an action or "illusion" that went beyond propriety.
There is no reported decision in New Jersey passing upon this type of amorphous presentation. Although the performances are repeated, the exact movements and lighting effects can never be recaptured. As the city's own witnesses testified, although the show was the same, the performances the day before did not create the illusion of nudeness. A live performance, as distinguished from a movie, book or other means of recording upon any tangible thing or any form of representation permanent in character, is of a vanishing quality of no permanency, incapable of continuous and successive transmission to other areas of the country in exactly the same form and image from whence it originated. Such conduct affects the area of its presentation, its scope inherently limited by its very nature. "The test in each case is the effect of the [presentation] considered as a whole * * * upon all those whom it is likely to reach." (Emphasis added) Roth, supra, at p. 490, 77 S.Ct., at p. 1312 (quoting trial judge's instructions).
In addition to its nature and scope, a local theatrical performance cannot be foisted upon an unwilling public, as occasionally *392 occurs when publications or samples are mailed to unwilling recipients or when advertisements are plastered along the highways and in towns and cities. (See Hudson County News Co. v. Sills, 41 N.J. 220, 223 (1963), appeal dismissed 378 U.S. 583, 84 S.Ct. 1914, 12 L.Ed.2d 1036 (1964), where passage of a statute was necessary to relieve retailers of handling unwanted objectionable material). A show such as this leaves uninfringed the enlightened choice of the people, either to support or reject the performances.
Therefore, it is the opinion of this court that in determining whether a live production is obscene, lewd or indecent, the adoption of a local morality at the time and place of exhibition, if one can be established, is the more realistic standard.
No expert evidence of contemporary community standards, either local or national, was offered in this case, thereby making the trier of fact, the court in this instance, the exclusive judge of the common conscience of the community. City of Chicago v. Kimmel, 31 Ill.2d 202, 205, 201 N.E.2d 386, 388 (Sup. Ct. 1964).
In determining whether these performances were obscene, the court was without the benefit of tangible evidence, either the costumes or pictures of the allegedly objectionable segments of the performances, and has but the police witnesses' subjective impressions equated with the specific classifications of obscenity in the ordinance. In other words, this court is called upon to accept the personal impressions, emotional reactions and subjective conclusions of these witnesses without having the benefit of its own reactions and impressions such as a court could acquire when evaluating literature or pictures.
"While certain expert opinion is admissible and may properly serve as an aid to the resolution of the substantive issues presented, there is a danger inherent in blindly accepting the conclusion of `the expert' in this area of law." G.P. Putnam's Sons, supra, at p. 92 (emphasis added).
*393 The court cannot abdicate its responsibility of determinating obscenity to a self-styled obscenity expert, sensitized to such conduct, whose presence at the performance was solely for the purpose of seeking out moments of erotic allurement, and who moved from the mezzanine to the twelfth row in order to get a closer look to justify his suspicions. Although every man's judgment is tinctured by his environment, education, religion and other complex forces, the "experts" who can best prove the reactions required under the ordinance are the patrons, who, according to the testimony of the police witnesses, openly voiced their dissatisfaction at one of the performances. This excludes, in the opinion of the court, any inference of an aroused prurient interest. A judge who is in the position to evaluate the evidence first-hand or from more reliable testimony than through the eyes of a so-called expert, can, although also possessed of human frailties, make a more objective and more unbiased determination of obscenity.
If the court is to adopt the moral standards of our metropolitan area, it would be influenced by the presence of topless waitresses, seven-eighths nude female nightclub entertainers (even without the support of pasties), and the profusion of cabarets, clubs and bars (whose patronage is limited to citizens who drink alcoholic beverages) abounding with scantily attired Go-Go girls whose untiring gyrations to the rhythm of our times involve every conceivable variation of bumps and grinds. Such an environment indicates the prevailing community standards, and this court cannot condemn that which the community generally tolerates.
The fleeting moments of these performances might have been tasteless and vulgar, succeeding only in adding to the mediocrity of our contemporary climate, but each presentation cannot "be banned in toto as lewd and indecent because a part  even a minute part  is coarse, vulgar or profane." Adams Theatre Co. v. Keenan, 12 N.J. 267, 272 (1953). In fact, the witnesses for the city testified that Miss Porth's presentation *394 was not offensive and Miss Khan's performance was artistic.
From the proofs presented, this court is not convinced beyond a reasonable doubt that the dominant note of the presentations of these three female performers was erotic allurement or so offensive as to warrant conviction.
By this conclusion the court does not invite disinterment and approval of burlesque of this type which, no doubt, the ordinance was designed to condemn and prevent. It simply has weighed the evidence before it and found it wanting. Significant (but not dispositive) is evidence to indicate that the producer of the performances sought and obtained tacit prior approval from one in apparent authority, indicative of an intent to comply with the ordinance, fully aware of the presence of the experts and professional witnesses at the performances.
Judgment of acquittal is entered on behalf of all defendants.