**STARSHOCK, INC., et al., Plaintiffs,**

v.

**Thomas J. SHUSTED, Individually and in his official capacity as Prosecutor of Camden County, New Jersey, et al., Defendants.**

**Civ. A. No. 1806–73.**

United States District Court,
D. New Jersey.

Feb. 8, 1974.

Martin Margolit, Camden, N. J., Galfand, Berger, Senesky, Lurie & March, by Richard S. March, Philadelphia, Pa., for plaintiffs.

Thomas J. Shusted, Prosecutor of Camden County by Mario A. Iavicoli, First Assistant Prosecutor, for defendant Camden County.

Thomas Higgins, Sol., Pennsauken Township, N. J., for defendants Manrico D'Anastasio and Thomas Higgins.

OPINION and ORDER

COHEN, Chief Judge:

Once again, the entertainment provided by the Club Lido, Pennsauken, New Jersey, for its patrons is under attack.

Heretofore, the topless and, at times, bottomless dancing of "Go-Go" girls was challenged by the State, County and Municipal Law Enforcement Authorities in

a three-judge court proceeding which rendered its opinion on June 5, 1973,[1] and appeal from which is pending in the United States Supreme Court.

Since then a sad lot has befallen the Club Lido: its alcoholic beverage license has been revoked; its application for renewal of the same has been denied by the local licensing authority; indictments have been returned by the Camden County Grand Jury and are pending against the owner, management, and its entertainers; and the Club had ceased its operations and closed its doors.

The latest chapter in the trials and tribulations of the ill-starred Club begins to unfold. Whether for commercial exploitation or as a matter of principle, the Club reopened its doors on February 4, 1974 with the well-advertised announcement of a new policy: "Nude Interpretive Dancing—No Alcoholic Beverages Sold." If nothing else, the persistence of the Club is worthy of note.

The instant action, instituted by the Club Lido's owner-managers against the Prosecutor of Camden County, his first assistant and the Solicitor and Mayor of Pennsauken, New Jersey, seeks to restrain these officials from interfering with the Club's introduction of this form of entertainment to the local community and its environs. Further, a declaratory judgment is sought by the plaintiffs urging that the proposed entertainment does not fall within the purview of (1) the New Jersey Lewdness Statute or (2) the Pennsauken Ordinance prohibiting the commercial exploitation of obscene material or acts.[2]

The issue presented to this Court is: Is "nude interpretive dancing" embraced within the guarantee of Freedom of Speech under the First Amendment to the United States Constitution?

Jurisdiction is based upon the provisions of 28 U.S.C. §§ 1331(a), 1343(3, 4), 2201, 2202, 2281 and 2284, and 42 U.S.C. §§ 1983, 1985, and under the First, Fifth and Fourteenth Amendments to the Constitution of the United States.

At a hearing held on January 25, 1974, this Court refused to issue a temporary restraining order as requested by plaintiffs. Rather, an agreement was reached between the parties and the Court wherein the Club would be allowed to open on February 4, 1974 at which time a video tape would be made for the Court's review to determine if an injunction should issue. Inasmuch as the challenge here is not directed to a book or film which could be read or viewed by the Court in the privacy of its Chambers, and a personal visit to the Club was not deemed feasible, the only alternative course of action was the submission to the Court of the video tape. Such was done, *in camera*, on the morning after opening night, solely by the Court, its law clerks and the operator of the equipment. Additionally, the Court was presented with several color photographs of the entertainers taken during the course of their performance. Pending the Court's decision, the Club would be free to operate without fear of police intervention.

Much to the dismay of the Court, technical developments occurred allegedly due to the jostling of the cinematographer by the throngs of curious patrons, resulting in an unsatisfactory viewing. The tape, lacking the artistry of a Cecil B. DeMille production, and the Court, mindful of the possible restraint employed by the entertainers with knowledge that their performance was being taped for judicial scrutiny, dispatched its two law clerks, unannounced

1. See Cherbonnie et al. v. Kugler, 359 F. Supp. 256 (D.N.J.1973) wherein the constitutionality of the New Jersey Lewdness Statute, N.J.S.A. 2A:115-1, and Rule 5 of the State Division of Alcoholic Beverage Control, interdicting "lewdness and immoral activity" at licensed establishments which serve alcoholic beverages, was challenged.

2. This ordinance was recently held unconstitutional in an opinion by Judge King of the Camden County Court. State v. Johnson, App. No. 111-72 (Camden Co.Ct.Crim.Div. Nov. 12, 1973).

and unheralded, to the scene on a fact finding mission to make a more objective and comprehensive examination of the Club's activities. Such was accomplished on the night following the opening. It might be said that this mission was a far cry from the routine duties of a judicial law clerk.

Upon an appraisal of the tape, photographs and affidavits executed by the Court's law clerks, the following was revealed:

On the door of the Club are several large signs notifying potential patrons of the entrance fee and cover charge (ten dollars). Immediately upon entering the quonset-like building, and after paying the entrance tariff, a patron is required to sign a "waiver" which indicates that he is over eighteen years of age, that he realizes that nude entertainment is being offered and that he does not consider nude entertainment lewd or offensive, but rather he considers it to be one of his constitutional rights to view this type of entertainment. A sign to this effect is prominently displayed near the entrance.

In the center of the Club are two oval bars, each surrounding a "stage" upon which the "artists" perform. Patrons may sit at the bar, or at elevated tables lining two walls of the Club. The lighting is limited, with most illumination coming from various colored spot and strobe lights focused upon the stages.

There are two girls dancing simultaneously—one in the center of each bar. They apparently enter from an "undressing" room located on the side of the Club. As the girls walk from the room to the stage, they are covered with sheer negligee-type garments. Upon reaching the stage, they disrobe and stand poised waiting for the first throbbing notes to sound. The girls "dance" to four numbers, then dress and leave. They are, of course, immediately replaced by two new girls.

The girls are completely nude as they gyrate with varying degrees of intensity. They bump, grind and bounce to the strains of contemporary rock music while the audience looks on sipping their one dollar soft drinks, with expressions of deep thought, nervousness, or amusement. While the girls carefully avoided fondling themselves or carrying on conversations with the patrons, the movements of their generously endowed torsos left absolutely nothing to the imagination. Indeed, those persons sitting at the bar were able to distinguish the quarter-inch letters of a tattoo located on the derriere of one young lady which identified her as "Property of the Dragon's Motorcycle Gang."

Plaintiffs argue that the activities in question are an art form, and hence, may not be suppressed. It is urged that the performers' gyrations are interpretations of the accompanying music, and that they are communicating certain ideas of freedom to the assembled throng. It is asserted that this method of expression is a form of speech warranting the protection of the First Amendment.

While this assertion may be valid in other circumstances, this Court finds that in relation to the performance as presented, it is without merit. Plaintiffs fail in their argument to note the significant distinction between speech and conduct. The public exposure of sex organs and nudity in this setting is not a matter of free expression. Rather, these acts are conduct cognizable as a crime under the common law, see, e. g., City of Newark v. Humphres, 94 N.J.Super. 384, 228 A.2d 550 (1967); State v. Von Cleef, 102 N.J.Super. 102, 245 A.2d 495 (1968), rev'd on other grounds, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969), and generally considered as having a reasonable relationship to the public welfare, and therefore, within the police power of the Legislature. Hoffman v. Carson, 250 So.2d 891 (Fla.1971).

Several cases involving gross nudity have distinguished conduct devoid of any artistic merit, which the Government can regulate, from speech, which is largely immune from regulation. As several state supreme courts have noted,

"When nudity is employed as sales promotion in . . . restaurants, nudity is conduct. As conduct, the nudity of employees is a fit subject for governmental regulation . . .." *City of Portland v. Derrington*, 253 Or. 289, 451 P.2d 111, cert. denied, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177 (1969). *See also* Hoffman v. Carson, *supra*.

The United States Supreme Court has consistently recognized the distinction between conduct, which may be regulated by the state, and expression which may not be interfered with except upon proof of obscenity, Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), or upon proof of the existence of a clear and present danger to a legitimate government interest, Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919). Thus, in the case of United States v. O'Brien, 391 U. S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), wherein a conviction for draft card burning was upheld against the contention that the act of draft card destruction was protected symbolic speech guaranteed by the First Amendment as a form of "communication of ideas by conduct", the Supreme Court noted:

> We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea. However, even on the assumption that the alleged communicative element in [the defendant's] conduct is sufficient to bring into play the First Amendment, it does not necessarily follow that the destruction of a registration certificate is constitutionally protected activity. This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment Freedoms. *Id.* at 376, 88 S.Ct. at 1678.

The Supreme Court has taken a similar position with regard to the power of the state to limit gross sexual conduct devoid of any, or very minimal, elements of expression. Miller v. California, *supra*, 413 U.S. at 26 n. 8, 93 S.Ct. 2607; California v. La Rue, 409 U.S. 109, 117, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972).

An examination of the video tape, the color photographs and the affidavits of the Court's law clerks leads this Court to the following conclusion:

It is determined that the performances offered at the Club Lido fall far short of presenting an issue of "speech" sufficiently important to outweigh the State of New Jersey's interest in curtailing nudity in public places. In no way can the movements of the "Ladies of the Ensemble" performed in unabashed nudity be considered an art form containing the slightest iota of "self-expresion." "Swan Lake", it was not! Although advertised as "Nude Interpretive Dancing", it was neither interpretive or dancing—just nude, a "Go-go" performance bereft of outer dress. What we have here is the cheap exploitation of human sexuality for purely commercial purposes.

This Court does not mean to suggest that nudity is in all circumstances devoid of expression worthy of protection under the First Amendment. "As a performance or an event moves more toward speech and further away from conduct, a more creditable issue would arise", Hoffman v. Carson, *supra*, and the *Miller* standards would then come into play. As plaintiffs themselves note, the beauty of the human body often plays a significant part in a film or play with serious elements of artistry. *See, e. g.*, Southeastern Promotions, Ltd. v. Mobile, 457 F.2d 340 (5th Cir. 1972); PBIC, Inc. v. Byrne, 313 F.Supp. 757 (D.Mass.1970). However, to even pretend that such "artistry" appears here is, to say the least, untenable.

Plaintiffs' motion for a Preliminary Injunction will be and hereby is denied.

Accordingly, it is on this 8th day of February, 1974 ordered that the application by the plaintiffs for a Preliminary Injunction and for a Declaratory Judgment be and hereby is denied;

Further, that the complaint heretofore filed be and hereby is dismissed without costs.