Robert BIRKENSHAW, Plaintiff,

v.

Thomas HALEY et al., Defendants.

Civ. A. No. 4–71302.

United States District Court,
E. D. Michigan, S. D.

April 26, 1974.

Richard Durant, Durant, Talbot, Grant & McQuarrie, Detroit, Mich., for plaintiff.

Howard J. Clyne, Clyne, Clyne & Mosier, Yale, Mich., for defendants.

## OPINION ON MOTION FOR PRELIMINARY INJUNCTION

KAESS, Chief Judge.

The Court is herein confronted with a constitutional attack upon a local ordinance which purports to prohibit "topless", and "bottomless", human exposure and "obscene live conduct". The matter is presently considered in the context of a *Motion for Preliminary Injunction*. Plaintiff attacks the ordinance on its face.

There is no serious dispute as to the facts. The plaintiff operates a bar in the Village of Emmett, St. Clair County, Michigan, under a Class B–Hotel License of the Michigan Liquor Control Commission, with a Dance-Entertainment Permit attached. Both the license and the permit were issued by the Commission after approval by the village council, and both expire on April 30, 1974.

The Village of Emmett is a small, rural community having a population of about three hundred (300) people; the town has to its name one school, one church, and one hotel; the hotel in turn contains the village's one bar, and that bar and its entertainment are the center of the present controversy. In the early part of 1974, the plaintiff allegedly began providing for his patrons that form of entertainment known as "topless" dancing. To say that this innovation aroused the ire of a certain portion of the local residents would be a considerable minimization of the situation. In direct response to objections made to it by various individuals, the village council passed Ordinance 22 which is the subject matter of the present complaint.

In a continuation of their efforts, the village council adopted a resolution objecting to the renewal by the Liquor Control Commission of the plaintiff's license and permit for the 1974–75 licensing year. The objection was based again on the type of entertainment offered at the bar. The Liquor Control Commission has said it will not allow renewal until the village council so recommends.

Both parties to this suit have acted quickly, perhaps too quickly, in responding to the problems with which they were confronted, both in and out of court. The complaint reflects this precipitous approach. The complaint fails to properly differentiate between the individual plaintiff and the corporate entity which the individual plaintiff owns, and which, in turn, is the owner of the property, permit, and license in question. A fair reading of the complaint, however, allows the inference that the individual plaintiff would be exposed to the criminal sanctions of Ordinance 22 as the " . . . operator, employer, agent, or . . . employee of any business" which allows the proscribed entertainment. It is fair to note, however, that this ambiguity might not be tolerated in the event that the Court is requested to

render a final decision on the merits of this case. The complaint can also be read so as to raise issues of fraud and estoppel, and a number of issues concerning the role that the village can play in the renewal of the liquor license and entertainment permit. Plaintiff's counsel, however, has represented in open court that the sole issue before the Court is the constitutionality of the ordinance. Counsel will be held to that statement, and there will be neither discussion nor decision of the abandoned issues, most notably those intertwined with the issuance and renewal of the liquor license.

A few preliminary matters merit comment.

■ It has been held by the Supreme Court that, unless bad faith or other special circumstances are present, a *pending* state criminal proceeding should not be enjoined, *Harris v. Younger,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), nor should a declaratory judgment be issued as to the constitutionality of the statute, *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). Left specifically open in *Samuels* was the question of whether declaratory relief was precluded when such a prosecution was not pending, and no showing had been made of bad-faith enforcement.

*Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505, 42 L.W. 4357 (1974), determined the open question. The petitioner in *Steffel* had twice been warned to stop handbilling on a public sidewalk, and was threatened with arrest by police if he failed to do so. An action was brought seeking injunctive and declaratory relief based upon the claim that the statute in question was violative of the First Amendment. The court held that the complaint did present an "actual controversy", as required by Article III of the Constitution, and that it was "not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights". 415 U.S. at 459, 94 S.Ct. at 1216, 39 L.Ed.2d at 514, 14 Crl at 3125. The court referred to

the familiar test in this area, namely, that the case present "a substantial controversy, between parties of adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment". *Maryland Casualty Co. v. Pacific Coal and Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826, 829 (1941). Although there is some dispute as to the nature or the existence of the threat to arrest the plaintiff, there can be little doubt, based upon the totality of the circumstances, that the present matter presents an "actual controversy". This is no hypothetical conflict involving straw men and crusading attorneys. The dispute between the litigants herein is actual, immediate, and real. See, *Hamar Theatres v. Cryan,* 365 F.Supp. 1312, 13 Crl 2449 (D.C.N.Y.1973).

■ Defendants argue that this Court should exercise restraint and follow the doctrine of abstention promulgated in *Younger. Steffel,* however, makes it clear that, insofar as declaratory relief is concerned, considerations of equity, comity, and federalism do not militate against federal declaratory relief in those instances, such as the present, where there is no pending state prosecution. The propriety of preliminary injunctive relief in such instances will be discussed below.

The inevitable discussion of obscenity is now in order. This is an area of the law which has befuddled courts and legislatures from the beginning. Judicial disquietude relative to this problem has increased even more since the Supreme Court rendered its five obscenity opinions in June, 1973. While putting to rest some old issues, these opinions necessarily raised new ones. The efforts of the lower court to deal with these issues are numerous, and have, on occasion, produced results which cannot be reconciled. The leading opinion of the recent obscenity cases was *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and therein the court announced this three-part test of constitutional limitation:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole, appeals to the prurient interest . . . , (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law, and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value." 413 U.S. at 16, 93 S.Ct. at 2610, 37 L.Ed.2d at 425.

Putting aside for a moment the *Miller* test, the first level of inquiry is this: Does a governmental entity have the power to impose an outright ban on nude or semi-nude public conduct, regardless of the context in which it is presented? The answer is, "No". In *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), the court was confronted with regulations promulgated not by a legislative body, but by the Department of Alcoholic Beverage Control of the State of California. The regulations prohibited nude or semi-nude entertainment in those places licensed to sell liquor by the drink. The regulations in *LaRue* were upheld, but based upon the presence of two factors which are notably absent in the present case. The regulations, which were admittedly overbroad from a purely First Amendment analysis, were particularly aimed at combating these social evils which had resulted from placing inebriated patrons in close proximity to nude or semi-nude entertainers (see 409 U.S. at 111, 93 S.Ct. at 393, 34 L.Ed.2d at 347). The Department responded by promulgating regulations aimed at eliminating the source of the temptation. The regulations were declared valid, based upon the peculiar powers vested in the states by the Twenty-First Amendment:

" . . . the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and mor-

als. In *Hostetter v. Idlewild Liquor Corp.,* 377 U.S. 324, 330, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964), the court reaffirmed that by reason of the Twenty-first Amendment 'a State is totally unconfined by traditional Commerce Clause limitations when it restricts the importation of intoxicants destined for use, distribution, or consumption within its borders.' Still earlier, the court stated in *State Board v. Young's Market Co.,* 299 U.S. 59, 64, 57 S.Ct. 77, 81 L.Ed. 38 (1936):

'A classification recognized by the Twenty-First Amendment cannot be deemed forbidden by the Fourteenth.' " 409 U.S. at 114–115, 93 S.Ct. at 395, 34 L.Ed.2d at 349.

The demonstrable nexus with the Twenty-First Amendment, combined with the fact that the regulations applied only to certain type establishments, was clearly the basis of the court's ruling:

"The substance of the regulations struck down prohibits licensed bars or nightclubs from displaying, either in the form of movies or live entertainment, 'performances' that partake more of gross sexuality than of communication. While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.

"Viewed in this light, we conceive the State's authority in this area to be somewhat broader than did the District Court. This is not to say that all such conduct and performance [is] without the protection of the First and Fourteenth Amendments. But we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort

of bacchanalian revelries that the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater.

"The Department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one. Given the added presumption in favor of the validity of the state regulation in this area that the Twenty-First Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution." 409 U.S. at 118–119, 93 S.Ct. at 397, 34 L.Ed.2d at 352.

■ It is equally clear from the opinion, which gained the approval of the same five Justices who joined in *Miller* that the regulations would be overbroad in the absence of the two aforementioned considerations. This follows from the realization that a dance or mime before an audience can, in certain circumstances, be an artistic pursuit entitled to First Amendment protection:

"Our prior cases have held that both motion pictures and theatrical productions are within the protection of the First and Fourteenth Amendments. In *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 72 S.Ct. 777, 96 L.Ed. 1098 (1952), it was held that motion pictures are 'included within the free speech and free press guaranty of the First and Fourteenth Amendments,' though not 'necessarily subject to the precise rules governing any other particular method of expression.' *Id.*, at 502–503, 72 S.Ct. at 781. In *Schacht v. U. S.*, 398 U.S. 58, 63, 90 S.Ct. 1555, 26 L.Ed.2d 44 (1970), the Court said with respect to theatrical productions:

'An actor, like everyone else in our country, enjoys a constitutional right to freedom of speech, including the right openly to criticize the Government during a dramatic per-

formance.'" 409 U.S. at 116–117, 93 S.Ct. at 396, 34 L.Ed.2d at 351.

■ See also, *Yauch v. State of Arizona*, 19 Ariz.App. 175, 505 P.2d 1066 (1973); *In re Giannini*, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535 (1968); *Haines v. State*, 512 P.2d 820, 13 Crl 2322 (Okl.1973); *Kingsley Pictures Corp. v. Regents*, 360 U.S. 684, 79 S.Ct. 1362, 3 L.Ed.2d 1512 (1959). Artistic pursuits which are truly expressive can be proscribed only if the test of *Miller* is satisfied.

■ It is equally clear, on the other hand, that not all forms of nude or semi-nude behavior are embodied with sufficient communicative content to warrant the protection of the First Amendment. A modern-day streaker, crying "free speech", will find no sympathetic chord in the Constitution:

"But as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases. States may sometimes proscribe expression that is directed to the accomplishment of an end that the State has declared to be illegal when such expression consists, in part, of 'conduct' or 'action,' *Hughes v. Superior Court*, 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985 (1950); *Giboney v. Empire Storage Co.*, 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834 (1949). In *O'Brien, supra*, [*U. S. v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672], the court suggested that the extent to which 'conduct' was protected by the First Amendment depended on the presence of a 'communicative element,' and stated:

'We cannot accept the view that an apparently limitless variety of conduct can be labeled "speech" whenever the person engaging in the conduct intends thereby to express an idea.' 391 U.S., at 376, 88 S.Ct., at 1678." 409 U.S. at 117–118, 93 S.Ct. at 396, 34 L.Ed.2d at 351.

This distinction is made clear in *Starshock v. Shusted*, 370 F.Supp. 506, 14 Crl 2455 (D.C.N.Y.1974), in which the court considered a particular form of entertainment offered by a local nightspot:

"Plaintiffs argue that the activities in question are an art form, and hence, may not be suppressed. It is urged that the performers' gyrations are interpretations of the accompanying music, and that they are communicating certain ideas of freedom to the assembled throng. It is asserted that this method of expression is a form of speech warranting the protection of the First Amendment.

"While this assertion may be valid in other circumstances, this court finds that in relation to the performance as presented, it is without merit. Plaintiffs fail in their argument to note the significant distinction between speech and conduct. The public exposure of sex organs and nudity in this setting is not a matter of free expression. Rather, these acts are conduct cognizable as a crime under the common law, *see, e. g., City of Newark v. Humphres*, 94 N.J.Super. 384, 228 A.2d 550 (1967); *State v. Von Cleef*, 102 N.J.Super. 102, 245 A.2d 495 (1968), *rev'd on other grounds*, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969), and generally considered as having a reasonable relationship to the public welfare, and, therefore, within the police power of the Legislature. *Hoffman v. Carson*, 250 So.2d 891 (Fla. 1971).

"Several cases involving gross nudity have distinguished conduct devoid of any artistic merit, which the Government can regulate, from speech, which is largely immune from regulation. As several state supreme courts have noted, 'When nudity is employed as sales promotion in . . . restaurants, nudity is conduct. As conduct, the nudity of employees is a fit subject for government regulation . . . .' *City of Portland v. Derrington*, 253 Or. 289, 451 P.2d 111, *cert. denied*, 396 U.S. 901, 90 S.Ct. 212, 24 L.Ed.2d 177

(1969). *See also, Hoffman v. Carson, supra.*

"The United States Supreme Court has consistently recognized the distinction between conduct, which may be regulated by the state, and expression which may not be interfered with except upon proof of obscenity, *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), or upon proof of the existence of a clear and present danger to a legitimate government interest, *Schenck v. United States*, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470 (1919)." 370 F.Supp. at 508.

Thus any statute dealing directly with nude or semi-nude conduct can take two possible approaches: Proscribe conduct which, although embodied with communicative content, can be characterized as obscene under *Miller*, or proscribe conduct which by its express terms is devoid of any communicative content. Consideration may now be given to the ordinance in question, a copy of which is found in the Appendix hereto.

When properly distilled, one effect of the ordinance, particularly Section 2 as it pertains to "topless" and "bottomless" conduct, is to absolutely prohibit, under any circumstances, any nude or semi-nude public behavior. The prohibition is outright, extends to every public place in the Village of Emmett, and offers not the merest pretext of being based upon the powers of the Twenty-First Amendment. It is not on its face limited to conduct which is devoid of any artistic value. It would likely prohibit a "performance by a scantily clad ballet troupe in a theater" (409 U.S., at 118, 93 S.Ct., at 397, 34 L.Ed.2d, at 352), for example, the "Ballets Africians" which has appeared in this area from time to time. Such a prohibition would appear to be constitutionally infirm. The problem, however, is most likely one of draftsmenship. Assuming, merely for purposes of discussion and not for purposes of indicating any predisposition on the factual issue, that the

entertainment offered by plaintiff is of the type discussed in *Starshock*, then a properly worded ordinance would be efficacious in the prohibition thereof. This court is of the opinion that "topless" and/or "bottomless" entertainment, as already defined by the ordinance, that is offered solely for commercial purposes and is devoid of any literary, artistic, political or scientific value can be absolutely prohibited. Although this may in fact have been the intent of the village council, the ordinance does not so reflect.

The ordinance also makes an attempt at the first permissible approach, namely, the prohibition of expression or communication which is obscene. A comment is, therefore, in order concerning that portion of the ordinance (Section 1c) entitled, "obscene live conduct." Unlike the definitions of "topless" and "bottomless," the definition of "obscene live conduct" does not appear to comply with the *Miller* requirement of specifically defined conduct capable of objective evaluation. This requirement is based upon established principles of fair notice. A statute or ordinance cannot be allowed to stand if, because of its imprecise wording, "men of common intelligence must necessarily guess at its meaning." *Connally v. General Construction Co.*, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926). This consideration is even more compelling when the statute at issue purports to regulate or proscribe the exercise of rights protected by the First Amendment. *United States v. National Dairy*, 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963).

The particular wording of *Miller*, however, has given rise to the issue of whether a state court can by "authoritative construction" provide unspecific obscenity statutes and ordinances with the specificity required to save them. The contention is made that the word "obscene" has independent judicial meaning, and its mere use in a statute or ordinance is, therefore, susceptible of authoritative judicial construction conformable with the guidelines of *Miller*. Those courts espousing this approach, therefore, hold obscene conduct is that conduct specifically enumerated as exemplary in *Miller*:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals." 413 U.S., at 25, 93 S.Ct., at 2615, 37 L.Ed.2d, at 431.

*United States v. Thevis*, 484 F.2d 1149, 42 L.W. 2182 (C.A.5, 1973); *Redlich v. Capri Cinema*, 43 A.D.2d 27, 349 N.Y. S.2d 697, 42 L.W. 2297 (1973); *State v. J–R Distributors*, 82 Wash.2d 584, 512 P.2d 1049, 14 Crl 2006 (1973); *Mitchum v. State*, 14 Crl (Tenn.1973); *Chobot v. Circuit Court*, 61 Wis.2d 354, 212 N.W.2d 690, 14 Crl 2323 (1973).

Other courts have held that it is the prerogative of the legislature to provide the required specificity. *Stroud v. State*, 13 Crl 2541 (Ind.1973); *State v. Shreveport News Agency*, 287 So.2d 464, 14 Crl 2273 (La.1973); *Hamar Theatres v. Cryan*, 365 F.Supp. 1312, 13 Crl 2449 (D.C.N.J.1973). Although there is an apparent majority favoring judicial construction, this federal court is not inclined to so construe the local ordinance presently in question. This is especially so in view of the other probable infirmity previously discussed. Besides the lack of specificity, the ordinance does not reflect accurately or entirely those general guidelines articulated in *Miller*.

From the foregoing, it is clear that plaintiff has demonstrated a likelihood of success on the merits. The prohibition of activity which is arguably protected by the First Amendment constitutes irreparable harm. The propriety of a preliminary injunction in declaratory actions of this type was not decided in *Steffel*. The court did allude to it in a footnote (12):

"We note that, in those cases where injunctive relief has been sought to restrain an imminent, but not yet

pending prosecution for past conduct, sufficient injury has not been found to warrant injunctive relief, see *Beal v. Missouri P. R. Corp.*, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); *Spielman Motor Sales Co., Inc. v. Dodge*, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935); *Fenner v. Boykin*, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926). There is some question, however, whether a showing of irreparable injury might be made in a case where, although no prosecution is pending or impending, an individual demonstrates that he will be required to forego constitutionally protected activity in order to avoid arrest. Compare *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *Hygrade Provision Co., Inc. v. Sherman*, 266 U.S. 497, 45 S.Ct. 141, 69 L.Ed. 402 (1925); and *Terrace v. Thompson*, 263 U.S. 197, 214, 216, 44 S.Ct. 15, 68 L.Ed. 255 (1923), with *Douglas v. City of Jeannette*, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed.2d 1324 (1943) . . ." 415 U.S. at 464, 94 S.Ct. at 1218, 39 L.Ed.2d at 517, 14 Crl at 3127.

Valuable guidance can be gleaned from *Detco Inc. v. McCann*, 365 F.Supp. 176, 14 Crl 2145 (D.C.Wis.1973), wherein the three-judge panel was confronted with a First Amendment attack upon an obscenity statute. The court granted temporary relief and concluded its opinion with language appropriate to the instant case.

"Therefore, this court will not lift the temporary restraining order but will refrain from ruling on the merits until the state has had an opportunity to change the present law by either judicial construction or statute."

█ The preliminary injunction prohibiting the enforcement of the ordinance shall issue, and remain in force until there has been reasonable opportunity to correct the apparent constitutional defects. If the defendants should choose to avail themselves of this opportunity, the authorities cited herein should prove to be instructive.

It is noted again that the court has discussed only the single issue presented to it, namely, the constitutionality of the ordinance, and that discussion has been in the context of a probability of success on the merits. Nothing herein should be construed as a final decision or as bearing upon the renewal of plaintiff's liquor license and entertainment permit.

An appropriate order shall issue.

(s) Fred. W. Kaess
CHIEF UNITED STATES DISTRICT JUDGE

### PRELIMINARY INJUNCTION

This matter having come on to be heard as a result of the filing of a Complaint and Order to Show Cause, oral arguments having been heard by both counsel in open court, the Court having ordered Briefs to be filed by both sides, and the Court being fully advised in the premises,

IT IS HEREBY ORDERED that:

The defendant Village President and the defendant Village Marshal and their agents, employees, servants and all other persons in active concert with them who receive actual notice of this Order for Preliminary Injunction by personal service or otherwise, refrain from enforcing, executing, administering or in any manner giving effect to Sections 2 and 4 of Ordinance 22 of the Village of Emmett, St. Clair County, Michigan, as adopted on March 4, 1974, until further order of this Court.

### APPENDIX

### ORDINANCE NO. 22

AN ORDINANCE PROHIBITING TOPLESS AND/OR BOTTOMLESS ENTERTAINMENT AND TOPLESS AND/OR BOTTOMLESS FOOD AND/OR BEVERAGE SERVICE IN THE VILLAGE OF EMMETT, AND TO PROVIDE A PENALTY FOR THE VIOLATION OF THE PROVISIONS THEREOF.

THE VILLAGE OF EMMETT, COUNTY OF ST. CLAIR, MICHIGAN, ORDAINS:

SECTION 1: For the purpose of this Ordinance, the following words and phrases shall have the meanings respectively ascribed to them by this Ordinance:

(a) "Topless" is defined as less than completely and opaquely covered female breasts below a point immediately above the top of the areola;

(b) "Bottomless" is defined as less than completely and opaquely covered human genitalia; human buttocks, or human pubic area, that being the lower part of the hypogastric region that from puberty on is normally covered with fine, soft, short hairs, whether or not such area is shaven or otherwise depilated.

(c) "Obscene live conduct" knowingly means any physical human body activity, whether performed or engaged in along or with other persons, including but not limited to singing, dancing, acting, simulating or pantomining, where, taken as a whole the predominant appeal of such conduct to the average person within the community, applying contemporary standards of the community, is to prurient interest, i.e., a shameful or morbid interest in nudity, sex or excretion; and is conduct which taken as a whole goes substantially beyond customary limits of candor in description or representation of such matter.

(d) "Knowingly" means being aware of the character of the matter or live conduct.

SECTION 2: It shall be unlawful for any person to knowingly be topless and/or bottomless, in public or to knowingly engage in any other obscene live conduct in public view, within the corporate limits of the Village of Emmett.

SECTION 3: It shall be unlawful for any owner, operator, employer, agent, or any employee of any business or establishment used for the sale or for other dispensing of food or beverage for consumption in or on the premises to suffer, allow or permit any person to serve food or beverage while topless and/or bottomless.

SECTION 4: It shall be unlawful for any owner, operator, employer, agent, or any employee of any business to knowingly allow, suffer, or permit any person to dance, mime, or otherwise entertain patrons, while topless or bottomless, or engage in other obscene live conduct in public view, within the corporate limits of the Village of Emmett.

SECTION 5: Any person convicted under this Section shall be guilty of a misdemeanor and punished by imprisonment in the county jail for not more than ninety (90) days or by a fine of not more than $100.00, or by both such fine and imprisonment.

SECTION 6: SAVINGS CLAUSE: Should any provision, section, paragraph, sentence, clause, phrase or word contained in this Ordinance be held unconstitutional by any Court, such decision shall not affect the validity of the remaining provisions, sections, paragraphs, sentences, clauses or words of this Ordinance.

SECTION 7: The effective date of this Ordinance shall be March 27, 1974.

ADOPTED by the Village Council of the Village of Emmett, St. Clair County, Michigan, this 4 day of March, A.D., 1974.

I, Jean Gajda, Village Clerk of the Village of Emmett, do hereby Certify that this Ordinance Prohibiting Topless and/or Bottomless Entertainment and Topless and/or Bottomless Food and/or Beverage Service in the Village of Emmett, and to Provide a Penalty for the Violation of the Provisions Thereof, was adopted by the Village Council of the Village of Emmett at a regular meeting held at the Village Hall on the 4 day of March, A.D., 1974.

Vote on this Ordinance, 5 members being present was as follows:

| | Yes | No |
|---|---|---|
| Thomas Haley | | |
| Patrick Grace | ✓ | |
| Daniel LaMay | ✓ | |
| Donna Quaine | ✓ | |
| Henry Speigel | ✓ | |
| Jane Hazelman | ✓ | |

(s) Jean Gajda
Jean Gajda
Village Clerk